1

2

3

4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

SAN JOSE DIVISION

7

8

ROBERT PEREZ,

Plaintiff,

9

10

v.

11

UNUM LIFE INSURANCE COMPANY
OF AMERICA,

12

Defendant.

Case No.   5:21-cv-03207-EJD

**ORDER DENYING PLAINTIFF'S
MOTION FOR JUDGMENT;
ENTERING JUDGMENT IN FAVOR
OF DEFENDANT**

Re: Dkt. Nos. 44, 47

13

Plaintiff Robert Perez sues Defendant Unum Life Insurance Company of America over a

14

denial of benefits to which Plaintiff claims he is entitled under his health insurance plan, which is

15

covered by the Employee Retirement Income Security Act ("ERISA").  Before the Court is

16

Plaintiff's motion for judgment and the Parties' trial briefs.  Having considered the submissions of

17

the Parties, the relevant law, and the record in this case, the Court **DENIES** Plaintiff's motion for

18

judgment and **ENTERS JUDGMENT** in Defendant's favor.[1]

19

**I.    BACKGROUND**

20

**A.  The Policy**

21

Defendant issued, Omnicell, Inc., Plaintiff's former employer, a Group LTD Policy ("the

22

Policy").  Administrative Record ("AR"), Dkt. No. 43 at 67–126.  The Policy provides a monthly

23

long-term disability benefit of 60% of monthly pre-disability earnings (to a maximum of

24

$15,000/month) in the event a claimant becomes "totally disabled."  *Id.* at 72.  The Policy defines

25

26

27

28

---

[1] On July 11, 2022, this Court found these motions appropriate for decision without oral argument
pursuant to Civil Local Rule 7-1(b).  *See* Dkt. No. 62.

Case No.: 5:21-cv-03207-EJD
ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT; ENTERING JUDGMENT IN
FAVOR OF DEFENDANT

United States District Court
Northern District of California

1  "totally disabled" as:

2          For the first 30 months, you are totally disabled when, as a result of
           sickness or injury, you are unable to perform with reasonable
3          continuity in the substantial and material acts necessary to pursue
           your usual occupation in the usual and customary way.

4          After benefits have been paid for 24 months of disability you are
5          totally disabled when, as a result of sickness or injury, you are not
           able to engage with reasonable continuity in any occupation in which
6          you could reasonably be expected to perform satisfactorily in light of
           your age, education, training, experience, station in life, and physical
7          and mental capacity.

8  *Id.* at 97.  The Policy provides that once benefits are approved, a claimant "must be under the

9  regular care of a physician" unless "regular care" "will not improve your disabling condition(s)"

10 or "will not prevent a worsening of your disabling condition(s)."  *Id.* at 98.  The Policy defines

11 "regular care" as "you personally visit a physician as frequently as is medically required, to

12 effectively manage and treat your disabling condition(s)" and "you are receiving appropriate

13 medical treatment and care for your disabling condition(s), which conforms with generally

14 accepted medical standards."  *Id.* at 113.

15         **B.  Plaintiff's Work Experience**

16         Plaintiff worked for Omnicell as a Senior Facilities Technician from 2007 through 2013.

17 *Id.* at 251–57.  His duties included assisting in the daily operation of facilities, making repairs,

18 performing basic electrical work, dismantling and re-installing furniture, cleaning, and managing

19 packages.  His job required effective communication, email use, and knowledge about how to use

20 Microsoft Office.  *Id.* at 285.  Plaintiff used a computer daily for data entry, writing reports,

21 emails, spreadsheets, HVAC controls, and Word programs/applications.  He also supervised others

22 and had experience with mechanical and electronic repair.  *Id.* at 1326.  Plaintiff was also a

23 Facility Manager at Webex Comm (2003–2007), a Facilities Service Specialist at Ricoh Corp

24 (2002–2003), and a Facilities Coordinator at Hitachi High Tech (2001–2002).  *Id.* at 251–57.

25 Plaintiff has a high school diploma and was a diesel mechanic and an emergency rescue swimmer

26 in the U.S. Coast Guard (1977–1989).  *Id.* at 1325.

27 Case No.: 5:21-cv-03207-EJD
28 ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT; ENTERING JUDGMENT IN
   FAVOR OF DEFENDANT

                                                2

United States District Court
Northern District of California

United States District Court
Northern District of California

### C.  Plaintiff's Disability Claim

Plaintiff's last day working as a Senior Facilities Technician at Omnicell, Inc. was July 10, 2013.  He then submitted a disability claim to Defendant.  During the initial February 7, 2014, call with Defendant, Plaintiff reported he had a total left knee replacement ("TKR") on July 11, 2013, and a week prior to the knee replacement, he fractured his right ankle, and had right ankle surgery on July 14, 2013.  He was released to modified work on November 18, 2013, with restrictions and limitations of no working on the knees and no ladder work for six months.  He denied a specific injury leading to his left TKR.  He also had a right TKR in March 2009 after he fell down stairs at home and hit his right knee.  *Id.* at 347, 850.  On March 18, 2014, Defendant approved long-term disability benefits effective January 9, 2014, and monitored his condition.  *Id.* at 217–21.

Plaintiff was treated at the Veteran's Administration ("VA") and Kaiser Permanente ("Kaiser").  In June 2014, post-surgical imaging of the right ankle and knee showed post-surgical changes, but the images were normal.  *Id.* at 833–35.  Plaintiff was noted to be morbidly obese since February 2003.  *Id.* at 714.  As of November 1, 2013, he weighted 377 pounds and had a BMI of 49.84.  *Id.* at 718.  Following his July 2013 left TKR and right ankle surgery, he managed his pain with medication.

In a May 16, 2014 Disability Status Update form, Plaintiff reported his pain medications were Oxycodone 5-325 mg and Motrin (Ibuprofen) 800 mg.  *Id.* at 292.  During a May 14, 2014 telephone call, Plaintiff reported he could not work because his ankle was swollen and his pain continued in both knees.  He also stated he was terminated from his job effective May 20, 2014.  *Id.* at 262.  Omnicell, Inc. advised it was unable to accommodate Plaintiff's work restrictions of not climbing ladders given his job duties.  *Id.* at 2414.  Internist Dr. Denley Jang completed an attending Physician Statement ("APS") on May 16, 2014, indicating restrictions and limitations of limiting stair climbing to occasional; limiting ladder climbing to never; and limiting any lifting, pulling, or pushing of more than 10 pounds through December 31, 2014 to never.  *Id.* at 297.  Defendant determined that given Plaintiff's medical history, he would likely have indefinite lower

1     extremity symptoms and limitations in walking, standing, stooping, squatting, kneeling, climbing,

2     and walking on uneven surfaces that would preclude work in his own medium occupation. *Id.* at

3     911. On August 5, 2014, Defendant approved benefits through the 24-month occupation period

4     ending January 8, 2016, and continued to pay benefits thereafter under the Policy's change in

5     definition of disability to "any gainful occupation" while it continued to monitor Plaintiff's

6     condition. *Id.* at 901.

7            During this time, on May 20, 2015, Plaintiff was awarded Social Security Disability

8     benefits ("SSDI") even though the Administrative Law Judge ("ALJ") found that Plaintiff had the

9     "residual functional capacity to perform sedentary work" with the following restrictions and

10    limitations: lift/carry/push/pull 10 pounds occasionally and < 10 pounds frequently; stand/walk for

11    less than 2 hours in an 8 hour day; sit for less than 6 hours in an 8 hour day with a sit/stand option

12    every 15 minutes; no climbing ladders, ropes, scaffolds; occasionally climb ramps stairs; never

13    balance/kneel; occasionally crouch; never crawl; occasionally stoop; no manipulative or visual

14    limits; avoid hazardous machinery and unprotected heights; avoid exposure to temperature

15    extremes. *Id.* at 966. While the ALJ indicated that under Social Security regulations there were

16    no jobs in the national economy that Plaintiff could perform, this was based on Plaintiff being of

17    "advanced age" and his inability to perform past relevant work as a Maintenance Repairer,

18    Industrial because this job required a "heavy exertional level." The ALJ's opinion did not detail

19    the computer skills that Plaintiff learned during his position with Omnicell, including his skills in

20    performing data entry, writing reports, and using Microsoft Office. *Id.* at 965–69.

21           In a September 23, 2016, telephonic status update with Defendant, Plaintiff reported his

22    knee and ankles were still shaking and his right knee would lock up and that he was receiving

23    acupuncture for sciatica. His right ankle was also still swelling. He reported he could not use

24    ladders or be on his knees or do any weightlifting. He saw Dr. Jang once a year, and there were no

25    changes to his medication. His daily activities were limited and included caring for flower beds,

26    doing chores, and watching his 4- and 6-year-old grandkids play. Plaintiff stated that he was not

1    able to travel because he could not drive far.  *Id.* at 1105–06.

2          In an October 20, 2016 APS, Dr. Jang noted Plaintiff was disabled by morbid obesity and

3    lumbar radiculopathy.  He could not climb ladders or lift/pull > 10 pounds and could only

4    occasionally stair climb.  *Id.* at 1127–28.  In a January 23, 2017 telephonic status update, Plaintiff

5    reported knee buckling and an infected back abscess.  *Id.* at 1158.  During a November 28, 2017

6    status update, Plaintiff reported his knees were shaking and that he had a sharp pain in both knee

7    caps.  His right ankle was also still swollen.  He was still in acupuncture for sciatica.  He had been

8    advised to lose weight for his knees and ankles.  He saw a psychologist at the VA for a few

9    months because of issues with his spouse but stopped.  He had also been diagnosed with floaters

10   in his eye and was seeing an optometrist once every three months.  He reported he walked 2 miles

11   with his dog at night and swam three days a week.  He was able to drive less than 20 minutes, up

12   to 2 hours.  He was able to use a computer for email, online shopping, browsing, gaming,

13   and paying bills.  *Id.* at 1179–80.  Defendant continued to pay benefits and monitor his condition.

14         More than a year later, during a January 31, 2019 status update, Plaintiff reported nothing

15   had changed other than his right knee was buckling more.  However, he was able to mow his lawn,

16   water and move plants, leaf blow, vacuum, and cook dinner.  He reported spending time with his

17   grandkids and would pick them up and go to indoor games or recitals.  He again reported using the

18   computer for online shopping and email.  He also reported that when he would go to doctor's

19   appointments, he would volunteer for about 30 minutes with veterans.  When asked what he

20   thought about going back to work, Plaintiff claimed he was too old.  Upon request by Defendant,

21   Dr. Jang submitted an APS dated February 1, 2019, that claimed Plaintiff was disabled by morbid

22   obesity and lumbar radiculopathy.  However, his only restriction and limitation was "can't climb

23   ladders," and expected to last "[f]orever."  Plaintiff's treatment plan consisted solely of weight

24   loss and exercise.  *Id.* at 1207–10.  Defendant continued to pay benefits and monitor Plaintiff's

25   condition.  *Id.* at 1230.

*United States District Court*
*Northern District of California*

1    A year later, during a February 20, 2020 status update call, Plaintiff reported he had lost 22

2    pounds and denied recent hospitalizations, surgeries, diagnoses, or upcoming surgeries.  He

3    reported he was not using assistive devices such as a cane or wheelchair.  He claimed his daily

4    symptoms were "obesity with my knee replacement" and that he could not get on his knees, had

5    difficulty standing for long, and could not lift over 25 pounds.  He was able to do household

6    cleaning, including vacuuming and dishes, and to work on the sprinklers outside.  He was able to

7    drive and grocery shop.  He reportedly kept a cane in his car to sometimes use while walking.  He

8    again reported computer skills, including "how to use all the excel spreadsheets things like that

9    and word."  *Id.* at 1254–56.  In a May 7, 2020 call, Plaintiff reported his "primary symptoms were

10   back pain."  He claimed, "some knee pain" and that he had a "hard time bending down" and

11   kneeling.  He reported that his pain on a regular day was 3–4/10 but could increase to 7–8/10 if he

12   had a flare.  No hospitalizations were noted in the records.  Plaintiff treated the pain with aspirin or

13   Tylenol and had also gone to acupuncture.  He reported he could stand for up to 30 minutes before

14   feeling pressure in his low back, and that he could sit for up to 30 minutes before needing to

15   change position.  He was able to do household work like vacuuming.  He cared for his grandkids,

16   including a 7-year-old with autism and a hyperactive 10-year-old and would watch TV, build

17   puzzles, and play Legos with them.  When asked about SSDI reassessment, Plaintiff stated he had

18   filled out papers seven years ago, but nothing recent.  *Id.* at 1504.

19   On April 28, 2020, Dr. Savita Nallapa (Internal Medicine) at the VA, submitted an APS

20   that was nearly identical to the one previously submitted by Dr. Jang on February 1, 2019 with just

21   the signature and dates changed.  *See id.* at 1207–10; 1374–76.  Dr. Nallapa indicated that Plaintiff

22   could not work due to morbid obesity and lumbar radiculopathy, but her only restriction was

23   "can't climb ladders."  Plaintiff's only treatment plan was weight loss and exercise.  *Id.* at 1374–

24   76.  In an April 29, 2020 response to a request by Defendant, Dr. Nallapa checked "No" to

25   whether Plaintiff could sustain sedentary occupational demands, but did not provide any

26   explanation despite being specifically asked to provide one if his answer was no.  *Id.* at 1387.

27   Case No.: 5:21-cv-03207-EJD
28   ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT; ENTERING JUDGMENT IN
     FAVOR OF DEFENDANT

United States District Court
Northern District of California

VA records did not document ongoing knee, back, or ankle pain treatment, or complaints:

- **September 30, 2014 Dr. Navjot Chaudhary (Neurosurgery)**: Plaintiff seen for L4 radiculopathy that began two years prior and noted to be improving. Epidural steroid injections provided three months of improvement. He was in physical therapy and exercising. He was advised to lose weight. His pain was being controlled. No follow-up was recommended. *Id.* at 2318–20.

- **February 12, 2019 Telemed Visit with Yulin Chu, DNP**: Plaintiff reported increased panic attacks. He did much of the daycare/babysitting for his 6 year old granddaughter. He reported feeling irritable due to issues involving a gay step-son, a granddaughter with autism, and a grandson. He reported his wife used cannabis for her trigger finger, which irritated him. She would smoke in the garage and watch TV for 17 hours/day, and he would have to clean the house. He also reported a recent physical altercation with his son. History of alcohol use was noted, but he had been sober since 2010. He also had a history of trauma from the Coast Guard, where his boat tipped over and he had to look for bodies. He was assessed with anxiety and marital problems. He was advised to continue taking Hydroxyzine for anxiety and Prozac. *Id.* at 1461–65.

- **April 9, 2019 Dr. Nallapa**: Plaintiff reported weight loss in past two months. He denied joint problems, numbness, tingling, and paresthesia. Anxiety and depression were under control with medication. His only reported pain medication was Ibuprofen as needed. On exam, he was in no acute distress and had trace lower extremity edema; findings were otherwise normal. Blood pressure was well-controlled. He was advised on diet, exercise, and weight loss. *Id.* at 1449–51.

- **April 9, 2019 Telemed Visit with Yulun Chu, DNP**: Plaintiff reported "I started walking about 20 minutes every morning! I have been doing gardening, cleaning and organizing house, and cooking." Plaintiff felt reduced anxiety on Hydroxyzine and Prozac with no more panic attacks and more energy. He was happy discussing his family, activities, exercises, and mood. Plan was to continue with medication. *Id.* at 1452–55.

- **July 2, 2019 Dr. Joyce Chen (Internal Medicine) and Dr. Rebecca Nkrume (Psychiatry)**: Plaintiff did not report pain in his ankle or knees. His medications were Atenolol 100 mg (for heart), Atorvastatin 40 mg (for cholesterol), Doxycyline 100 mg (for acne), Fluoxetine 20mg (for depression), Hydroxyzine 25 mg (for anxiety), Ibuprofen 800 mg (for pain or inflammation), and Lisinopril 20 mg (for blood pressure). He was referred to an audiologist and fitted for hearing aids due to reports of worsening hearing loss. *Id.* at 1435–41.

- **December 9, 2019 Dr. Albert Liang (Internal Medicine)**: Plaintiff claimed that "about 2 months ago he had flare up of his lower back pain." He reported he received acupuncture when he had a prior flare up that was effective. On exam, there was no vertebral tenderness, no straight leg raise sign, and he was able to stand on his tip toes and heels. Motor strength was 5/5 and sensory exam was symmetric bilateral to touch. X-ray and

referrals to chiropractic care and physical medicine & rehabilitation were recommended but Plaintiff declined them.  Dr. Liang also discussed the risks and benefits of NSAIDs but Plaintiff declined.  Plaintiff preferred acupuncture.  He was advised to return if his symptoms worsened or did not improve within a week.  *Id.* at 1426–27.  From the record, it does not appear that Plaintiff followed up.

- **December 5, 2019–February 20, 2020**: Plaintiff completed 8/8 sessions of a group anger management program.  *Id.* at 1409–28.  At a January 27, 2020 visit with Dr. Akkireddi (Psychiatry), Plaintiff's mood was noted to be stable, and he denied anxiety or restlessness.  He was eating healthy and had lost 20 pounds in the past 4 months.  *Id.* at 1412–13.

On May 21, 2020, Clinical Consultant Sarah Fournier, RN, reviewed Plaintiff's medical records and concluded that based on Plaintiff's reported activities of doing housework and caring for his grandkids, in addition to the fact that his knee and right ankle had healed after surgery, it did not appear he would be precluded from primarily seated demands with positional changes as needed, which appeared to be every 30 minutes based on his self-report.  While Plaintiff reported lumbar spine pain, he was not treating it with medication other than occasional NSAIDs and occasional acupuncture.  He was not taking narcotics or muscle relaxers, nor did he have injections.  He did not have any recent surgical intervention or imaging.  He was also treated infrequently and appeared to have refused treatment options such as referrals and chiropractic care during a flare in December 2019.  His physical exams did not document strength, motor, or sensory deficits, and he was noted to have normal gait.  It appeared his back pain was stable.

Regarding Plaintiff's diagnosis of morbid obesity, it was not clear why Plaintiff's provider had set forth restrictions and limitations since he had previously sustained medium-level work when he weighed 372 pounds.  As to Plaintiff's diagnoses of anxiety and depression, Nurse Fournier noted that Plaintiff was stabilized due to medication and anger management sessions.  Nurse Fournier concluded that while Plaintiff would be unlikely to sustain medium work, his capacity for seated/sedentary demands was unclear and required a consult with an On-Site Physician ("OSP").  *Id.* at 1511–18.  In a May 21, 2020 Forum Discussion with Nurse Fournier, OSP Dr. William Fox (Board Certified Internal Medicine), and Vocational Rehabilitation Consultant ("VRC") Beth Darman, concluded that while Plaintiff reported he could not work due to back symptoms, he was not in active treatment and did not seek further evaluation when he had

a flare in December 2019.  He also had a longstanding history of morbid obesity with which he previously sustained medium work.  His anxiety and depression also appeared to be stable with medication.  It was recommended to obtain additional records on his psychiatric care and reach out to his internist, Dr. Nallapa.  *Id.* at 1522–24.

Defendant received additional records from the VA.  Defendant notes an April 3, 2020 telephone visit with Dr. Nallapa.  Dr. Nallapa last saw Plaintiff in April 2019.  Plaintiff reported he "feels well, has been eating better getting more exercise."  He had gotten his weight down to 358 from 373 as of January 2020.  No active pain medications were listed.  The plan was to continue with his medications (which were managing his heart, cholesterol, acne, depression, anxiety, and a fungal infection) and continue diet, exercise, and weight reduction.  No restrictions and limitations were noted.  *Id.* at 1577–81.  Plaintiff did not seek further treatment for his orthopedic issues but was noted to have gone to the ER on May 18, 2020 for recurrent epidermoid cysts in the groin.  He was advised on conservative management at home with warm compress and a sitz bath.  *Id.* at 1559–61.

On July 14, 2020, Plaintiff submitted a December 29, 2014 Rating Decision from the VA.  It was noted he had filed a claim for VA benefits on February 27, 2014 arising from service in the Coast Guard from 1977–1991.  The decision noted there was service connection for impairment due to bilateral TKR, right ankle osteoarthritis, and left lower extremity radiculitis.  However, the decision did not set forth specific restrictions and limitations.  The decision noted that Plaintiff's entitlement to "individual unemployability is denied because the claimant has not been found unable to secure or follow a substantially gainful occupation as a result of service connected disabilities."  *Id.* at 1601–07.

On July 16, 2020 and July 17, 2020, OSP Dr. Fox left messages for Dr. Nallapa to discuss Plaintiff's condition.  On July 17 Dr. Nallapa left Dr. Fox a voicemail stating, "in talking with the insured, he has stated that he remains unable to perform desk type work," and "[Defendant] should perform an independent exam if we are still questioning whether the insured has work capacity."

United States District Court
Northern District of California

1   *Id.* at 1594.  On June 19, 2020, OSP Dr. Fox recommended that a physician specializing in

2   Physical Medicine and Rehabilitation (PM&R)/Occupational Medicine address the specific

3   question of whether Plaintiff was precluded from sedentary occupational duties.  On June 24,

4   2020, Disability Benefit Specialist Eric Fortin completed a referral to third-party vendor (Dane

5   Street) to arrange an independent medical examination ("IME") and address the questions posed

6   by Dr. Fox.  *Id.* at 1595; 1629–34.

7         On July 31, 2020, Dane Street arranged for Dr. Kaisler-Meza, board certified in PM&R, to

8   examine Plaintiff and prepare a report regarding Plaintiff's ability to sustain the identified

9   sedentary occupational demands.  On August 17, 2020, Defendant received Dr. Kaisler-Meza's

10  report.  *Id.* at 1652.  Dr. Kaisler-Meza noted that upon examination of Plaintiff, he was using a

11  single point cane.  *See id.* at 1655–61.  Plaintiff denied taking any pain medication (he listed only

12  taking medications for blood pressure, cholesterol, anxiety, and depression).  Plaintiff's spine had

13  normal curvature with tenderness along the bilateral lumbar paraspinal muscles and limitation in

14  range of motion.  Right and left knees had well-healed scars with some limitation in range of

15  motion.  Right ankle had swelling with some limitation in range of motion.  Neurological exam

16  was largely normal with intact motor strength, no sensory deficits, and symmetric strength reflexes

17  in the upper extremities.  In the lower extremities Plaintiff had symmetric muscle strength with

18  some decreased sensation in the left calf.  Motor strength was 4/5 in the right knee and 4+/5 on the

19  left.  *Id.*

20        Dr. Kaisler-Meza also reviewed Plaintiff's medical records.  He concluded, based on his

21  exam and review, that Plaintiff could "occasionally to frequently engage the upper extremities for

22  reaching forward, handling, fingering, keyboard use."  He also opined Plaintiff had capacity for

23  "cognitive demands that would include but not be limited to directing, controlling, planning

24  activities of others; dealing with people; performing a variety of duties; short and detailed

25  instruction memory; concentration and attention."  Plaintiff was also able to lift/carry/push/pull up

26  to 10 pounds occasionally; and sit 30 minutes at a time with the need to take a 10–15-minute break

27

28  Case No.: 5:21-cv-03207-EJD
    ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT; ENTERING JUDGMENT IN
    FAVOR OF DEFENDANT

to stand or walk.  Regarding Plaintiff's lumbar-spine, Plaintiff was precluded from repetitive bending/twisting at the waist.  Regarding Plaintiff's knees, he was precluded from squatting/ crawling; kneeling/working from heights/climbing on ladders.  *Id.*  Regarding his right ankle, he was precluded from pivoting on it.  On August 18, 2020, Defendant requested clarification of the restriction and limitation of a 15-minute break to stand/walk after sitting 30 minutes and whether Plaintiff could stand at his desk.  *Id.* at 1655–61.  On August 19, 2020, Dane Street submitted a clarified report wherein Dr. Kaisler-Meza noted "[i]t would be acceptable if the claimant were allowed the option of standing at his workstation/desk during the 15-minute breaks." *Id.* at 1672.

On March 4, 2020, Senior VRC Darman performed a skills assessment.  *Id.* at 1327–28.  In 2020, Plaintiff's gainful wage—equivalent to 60% of his indexed monthly earnings—was $20.37/hour based on his prior monthly earnings at Omnicell, Inc.  *Id.* at 1287.  Based on Plaintiff's vocational history, it was noted Plaintiff had skills in "coordinating, analyzing, compiling, supervising, taking instructions, precision working and handling."  Plaintiff also demonstrated the temperaments for directing, controlling, planning, performing a variety of duties, attaining precise limits, dealing with people, and making judgments and decisions.  Plaintiff also was able to use the computer and had used a computer in his job for several tasks.  The review concluded Plaintiff had the skills to sustain alternate sedentary occupations at his gainful wage with the following requirements:

> Mostly sitting, may involve standing or walking for brief periods of time, lifting, carrying, pushing, pulling up to 10 lbs. occasionally with occasional to frequent use of the upper extremities for reaching forward, handling, fingering and keyboard use.  The occupations would allow for positional changes throughout the day.

*Id.* at 1327–28.

In a May 27, 2020 review, VRC Darman also identified the required cognitive demands of sedentary occupations: Directing, controlling or planning activities of others; Dealing with people; Performing a variety of duties; Short and detailed instruction memory; Concentration and attention.  On August 20, 2020, applying Plaintiff's vocational background, Dr. Kaisler-Meza's

United States District Court
Northern District of California

1    restrictions and limitations, the Dictionary of Occupational Titles "DOT," Plaintiff's labor market

2    in San Jose, CA, and OASYS 3.90.01 (a vocational software program), VRC Darman identified

3    three sedentary occupations within Plaintiff's vocational and educational levels: (1) Repair Order

4    Clerk ($20.52/hour); (2) Vehicle Maintenance Scheduler ($21.71/hour); and (3) Dispatcher

5    ($22.55/hour). VRC Darman noted these positions would allow Plaintiff to take a 15-minute

6    break by standing at his workstation/desk without disrupting productivity. She also noted no

7    special training, licensure, or certifications would be required. *Id.* at 1675–78. On August 21,

8    2020, Unum Life informed Plaintiff it determined that he no longer met the Policy's definition of

9    disability and discontinued benefits. *Id.* at 1686-1695.

10       On December 10, 2020, Plaintiff's counsel Robert Rosati submitted an appeal that raised

11    issues with the occupations identified. *Id.* at 1867–2984. The appeal included attached exhibits of

12    medical printouts. *Id.* Defendant notes that the appeal did not include any updated medical

13    records related to Plaintiff's orthopedic complaints. Instead, the medical records documented

14    visits from May–July 2020 at the VA for epidermal cysts in Plaintiff's groin that were extracted

15    on June 8, 2020. Physical exams at these visits did not document remarkable findings with respect

16    to his knees, back, or extremities, or ongoing orthopedic complaints or restrictions and limitations.

17    *Id.* at 2022–51. As of May 18, 2020, Plaintiff was noted to have grossly intact motor and

18    sensation, was ambulating independently, and reported moderate activity. *Id.* at 2050. As of June

19    12, 2020, he had normal speech and gait with no crepitus or fluctuance on musculoskeletal exam.

20    *Id.* at 2040. As of July 7, 2020, Plaintiff reported: "my wounds feel really good." It was noted he

21    was "well looking" with no abnormal musculoskeletal findings noted. Plaintiff was encouraged to

22    exercise and engage in physical activity to assist with weight loss. *Id.* at 2027–30.

23       On December 30, 2020 Senior VRC Kelly Marsiano, M.Ed., CRC, addressed the concerns

24    raised by Plaintiff's counsel and confirmed that Plaintiff had transferrable skills, including

25    computer experience from his past work, to perform the occupations that were identified. *Id.* at

26    2992–93. Clinical Consultant Margaret Maxell, RN, reviewed Plaintiff's records and assessed

27

28    Case No.: 5:21-cv-03207-EJD
ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT; ENTERING JUDGMENT IN
FAVOR OF DEFENDANT

United States District Court
Northern District of California

1   each of his conditions (knee and right ankle pain, recurrent epidermal cysts, treatment for anger

2   management and depression).  In a report dated January 4, 2021, Nurse Maxell noted that

3   Plaintiff's consistently reported activities—watching his grandkids, cooking, assisting with

4   household tasks, exercising in a pool, on a bike, or treadmill, driving, and shopping—were

5   consistent with the ability to perform sedentary duties.  Regarding Plaintiff's knee and right ankle

6   pain, she noted there was minimal follow-up for his knee pain since 2014.  The most recent knee

7   exam was at the July 31, 2020 IME, where it was noted Plaintiff had largely normal sensation,

8   strength, and reflexes.  Regarding the epidermal cysts, RN Maxell noted they had been removed

9   with no complication with healed wounds.  Regarding Plaintiff's alleged mental health issues, she

10  noted that by January 27, 2020, Plaintiff was reported to be doing well and with a stable mood.

11  He also reported he was able to deal with his family issues better and was continued on

12  medication.  RN Maxell recommended an OSP review.  *Id.* at 2999–3003.

13         OSP Dr. Phillip Lahey, board certified in orthopedic surgery, reviewed Plaintiff's records

14  and concluded they did not support a finding that he was precluded from the identified physical or

15  cognitive demands of sedentary work beyond August 21, 2020.  Dr. Lahey noted that while

16  Plaintiff reported pain in his back, knees, and right ankle, the severity of the pain was not

17  explained by exam findings.  Plaintiff's lumbar spine did not show evidence of motor changes or

18  nerve root tension.  His knees did not show signs of component failure or infection and he had

19  functional strength and range of motion following TKR.  His ankle fracture had healed after

20  surgery.  His morbid obesity had remained stable.  Moreover, Plaintiff's complaints of fatigue,

21  weakness, and shortness of breath were not documented in the records.  Dr. Lahey pointed out that

22  while Dr. Nallapa reported that Plaintiff could not perform sedentary work, she did not provide

23  any supporting examination findings.  He also explained that Dr. Kaisler-Meza's July 31, 2020

24  IME was the most recent physical exam that addressed all of Plaintiff's reported complaints, and

25  there were no abnormalities in strength, motion, sensory exam and pain to palpation documented

26  on exam.  Plaintiff's mental health issues also appeared to be controlled with therapy and

27

28  Case No.: 5:21-cv-03207-EJD
    ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT; ENTERING JUDGMENT IN
    FAVOR OF DEFENDANT

United States District Court
Northern District of California

1    medication.  Dr. Lahey agreed with Dr. Kaisler-Meza's restrictions and limitations.  *Id.* at 3008–

2    16.

3         Defendant also obtained a review from OSP Dr. Peter Brown, board certified in psychiatry,

4    who concluded there was no support for behavioral health ("BH") restrictions and limitations as of

5    August 21, 2020, noting there were no BH records beyond February 20, 2020, by which time

6    Plaintiff had completed management and his subsequent treatment was limited to as needed

7    follow-up.  *Id.* at 3019–20.

8         On January 22, 2021, Defendant advised Plaintiff's counsel that it determined the decision

9    to close Plaintiff's claim was correct.  *Id.* at 3028–42.  Defendant offered Plaintiff an opportunity

10   to request his claim file and submit additional information applicable to the appeal decision prior

11   to the time when Defendant's decision becoming final.  At Plaintiff's counsel's request, Defendant

12   provided the claim file to Plaintiff on February 3, 2021.  *Id.* at 3051.

13        On February 22, 2021, Plaintiff's counsel submitted a letter arguing the identified

14   occupations were not suitable because Plaintiff did not have computer skills and because Ms.

15   Marsiano's vocational review wrongly assumed Plaintiff was proficient in MS Word.  Counsel

16   also contended that the need for Plaintiff to change his position was an accommodation "no

17   employer is obligated to do."  *Id.* at 3057–79.  On March 11, VRC Kelly Marsiano clarified the

18   identified occupations of Repair Order Clerk, Vehicle Maintenance Scheduler, and Dispatcher

19   would only require a basic understanding of computers that Plaintiff had based on his work

20   experience and personal use.  Ms. Marsiano also explained that the need to take a 15-minute break

21   was not an "accommodation" but instead a simple shifting in position while sitting or using a

22   headset to allow for standing next to the desk or chair for a brief period while talking.  These

23   positional changes would not interrupt workflow.  *Id.* at 3283–85.  On March 24, Defendant

24   upheld its decision on appeal.  *Id.* at 3288–97.

25

26

27

28

United States District Court
Northern District of California

1

## II.    LEGAL STANDARD

2

This Court reviews challenges to an ERISA plan's denial of benefits *de novo* "unless the

3

benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for

4

benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S.

5

101, 115 (1989).  Where such discretion is vested in the administrator, "a district court may review

6

the administrator's determinations only for an abuse of discretion."  *Taft v. Equitable Life*

7

*Assurance Soc'y*, 9 F.3d 1469, 1471 n.2 (9th Cir. 1994).  The Parties agree that the *de novo*

8

standard of review applies.

9

The District Court's *de novo* review of the Parties' submissions and resolution thereof, can

10

best be understood as essentially a bench trial on the papers with the District Court acting as a

11

finding of fact.  *See Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 124 (2d Cir. 2003); *see also*

12

*Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1094–95 (9th Cir. 1999) (holding in an ERISA

13

disability benefits case that "in its discretion, . . . the district court may try the case on the record

14

that the administrator had before it").

15

When review is *de novo*, "the court does not give deference to the claim administrator's

16

decision, but rather determines in the first instance if the claimant has adequately established that

17

he or she is disabled under the terms of the plan."  *Muniz v. Amec Const. Mgmt. Inc.*, 623 F.3d

18

1290, 1295–96 (9th Cir. 2010); *see also Polnicky v. Liberty Life Assurance Co. of Boston*, 2014

19

WL 6680725, at *7 (N.D. Cal. Nov. 25, 2014) ("When conducting de novo review of a decision

20

by an ERISA plan administrator, the Court has a responsibility to undertake an independent and

21

thorough inspection of the decision.").  The Court evaluates "whether the plan administrator

22

correctly or incorrectly denied benefits, without reference to whether the administrator operated

23

under a conflict of interest."  *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir.

24

2006).

25

In reviewing the plan administrator's decision, the Court has discretion to allow evidence

26

that was not before the plan administrator, but "only when circumstances clearly establish that

27

28

United States District Court
Northern District of California

1   additional evidence is necessary to conduct an adequate *de novo* review of the benefit decision."

2   *Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F.3d 938, 944 (9th Cir.

3   1995).  When construing the terms of the Plan, the Court must "apply contract principles derived

4   from state law . . . guided by the policies expressed in ERISA and other federal labor laws."

5   *Dupree v. Holman Pro. Counseling Ctrs.*, 572 F.3d 1094, 1097 (9th Cir. 2009).  Under California

6   law, the Court must construe each provision of the Plan "in a manner consistent with the whole

7   such that none is rendered nugatory."  *Id.* (citing Cal. Civ. Code § 1641).  In California,

8   ambiguities in insurance contracts must be construed against the insurer.  *Lang v. LTD Benefit*

9   *Plan*, 125 F.3d 794, 799 (9th Cir. 1997) (citing *Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534,

10   539 (9th Cir. 1990).

11          Here, the Court must determine whether Plaintiff is disabled within the meaning of the

12   Plan, as required for continued receipts of long-term disability benefits from Defendant.  *See*

13   *Muniz*, 623 F.3d at 1298.  A plaintiff challenging a benefits decision under 29 U.S.C.

14   § 1132(a)(1)(B) bears the burden of proving by a preponderance of the evidence that he is entitled

15   to long term benefits under the terms of the Policy.  *Id.* at 1294 ("[W]hen the court reviews a plan

16   administrator's decision under the de novo standard of review, the burden of proof is placed on the

17   claimant.").

18   **III.    DISCUSSION**

19          Plaintiff moves for judgment that he was unable to work in any occupation as of August

20   21, 2020, or, alternatively, that Defendant breached its fiduciary duty.  Plaintiff argues that the

21   Policy's definition of "Any Occupation" is ambiguous; that the examples of sedentary occupations

22   identified are either too demanding, require training, or are beneath him; and that the IME should

23   not be considered because it is inconsistent with the initial internal rough draft that was never sent

24   to Defendant during the claim (and therefore is not a part of the administrative record).  However,

25   the record demonstrates that while Plaintiff was initially disabled from his knee and ankle

26   surgeries, he recovered and by August 21, 2020, was able to work in a non-physically demanding

United States District Court
Northern District of California

occupation.[2]

The record demonstrates that as of August 21, 2020, Plaintiff was able to work within certain restrictions and limitations in sedentary gainful occupations.  The AR identifies examples of sedentary occupations Plaintiff can perform considering his age, education, training, experience, station in life, and physical and mental capacity.  The record also includes all the evidence that Defendant relied on in reaching its decision, including an IME by Dr. Kaisler-Meza, an independent, board-certified physician in physical medicine and rehabilitation.  As recounted above, on July 31, 2020, Dr. Kaisler-Meza examined Plaintiff and reviewed several hundred pages of his medical records before concluding that Plaintiff could perform non-physically demanding work within certain restrictions and limitations.  Because Defendant's decision to terminate benefits is supported by the record, the Court **DENIES** Plaintiff's motion and enters judgment in favor of Defendant.

### A.  Plaintiff's Request for Consideration of Documents Outside the Administrative Record

Whether a court can consider evidence outside the administrative record "depends on whether review is de novo . . . or for abuse of discretion."  *Abatie*, 458 F.3d at 696.  "[C]ourts limit a district court to the administrative record when the court is reviewing a case on the merits for an abuse of discretion; consideration of new evidence is permitted only in conjunction with de novo review of a denial of benefits."  *Id.*; *see also Jebian v. Hewlett-Packard Co. Emp. Benefits Org. Income Prot. Plan*, 349 F.3d 1098, 1110 (9th Cir. 2003) ("While under an abuse of discretion standard our review is limited to the record before the plan administrator, this limitation does not apply to de novo review.").

In *Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F.3d 938 (9th Cir. 1995), the Ninth Circuit joined the Third, Fourth, Seventh, Eighth, and Eleventh Circuits in

---

[2] Defendant argues that because Plaintiff's motion is silent on the issue of life waiver of premium benefits, Defendant is entitled to judgment on that issue.  However, Plaintiff's Complaint does not seek a reinstatement of the life waiver of premium benefits, and Plaintiff does not raise the issue in his briefs.  Accordingly, there is no issue to adjudicate.

Case No.: 5:21-cv-03207-EJD
ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT; ENTERING JUDGMENT IN FAVOR OF DEFENDANT

17

"permit[ting] the admission, under carefully circumscribed conditions, of new evidence that was not part of the record before the plan administrator" when the district court is reviewing a denial of benefits *de novo*. *Id.* at 943. In elaborating on the standard a district court should apply in exercising discretion to consider evidence not before the plan administrator, the *Mongeluzo* court quoted *Quesinberry v. Life Insurance Co. of North America*, 987 F.2d 1017, 1025 (4th Cir. 1993):

> In our view, the most desirable approach to the proper scope of de novo review under ERISA is one which balances the [ ] multiple purposes of ERISA. Consequently, we adopt a scope of review that permits the district court in its discretion to allow evidence that was not before the plan administrator. The district court should exercise its discretion, however, *only when circumstances clearly establish that additional evidence is necessary to conduct an adequate de novo review of the benefit decision*. In most cases, where additional evidence is not necessary for adequate review of the benefits decision, the district court should only look at the evidence that was before the plan administrator . . . at the time of the determination.

The *Mongeluzo* court emphasized, however, that "a district court should not take additional evidence merely because someone at a later time comes up with new evidence that was not presented to the plan administrator." *Id.* at 944; *see also Quesinberry*, 987 F.2d at 1027 ("[I]f the evidence is cumulative of what was presented to the plan administrator, or is simply better evidence than the claimant mustered for the claim review, then its admission is not necessary."). Thus, in most cases, only the evidence that was before the plan administrator should be considered. *Kearney*, 175 F.3d at 1084.

In *Opeta v. Northwest Airlines Pension Plan for Contract Employees*, 484 F.3d 1211, 1218 (9th Cir. 2007), the court cited with approval *Quesinberry*'s "non-exhaustive list of exceptional circumstances" in which the consideration of additional evidence may be necessary:

> claims that require consideration of complex medical questions or issues regarding the credibility of medical experts; the availability of very limited administrative review procedures with little or no evidentiary record; the necessity of evidence regarding interpretation of the terms of the plan rather than specific historical facts; instances where the payor and the administrator are the same entity and the court is concerned about impartiality; claims which would have been insurance contract claims prior to ERISA; and circumstances in which there is additional evidence that the claimant could not have presented in the administrative process.

United States District Court
Northern District of California

United States District Court
Northern District of California

Notably, the Ninth Circuit has cautioned that even if several of these exceptional circumstances are present, a court must still find that these circumstances require consideration of the extrinsic evidence to conduct a *de novo* review of the benefits decision. *Id.* This is because limiting the evidence to the record before the administrator serves an important purpose—it ensures that district courts do not become substitute plan administrators. *See Hall v. Unum Life Ins. Co. of Am.*, 300 F.3d 1197, 1212 (10th Cir. 2002); *see also Silver v. Exec. Car Leasing Long-Term Disability Plan*, 466 F.3d 727, 731 n.2 (9th Cir. 2006). "'By strictly limiting the circumstances in which supplementary evidence may be presented, the risk of increasing decision costs—and of deterring employers from providing pension and benefit plans to their employees— is controlled.'" *Sandoval v. Reliance Standard Life Ins. Co.*, 2021 WL 1523910, at \*7 (C.D. Cal. Mar. 5, 2021) (quoting *Hall*, 300 F.3d at 1202).

In addition to the almost 4,500-page administrative record, which includes all the documents Defendant relied on in reaching its decision, Plaintiff seeks to admit to the record documents that were not considered by Defendant, including:

- Documents produced with Defendant's First and Second Supplemental Disclosures, which include non-substantive emails and Microsoft Teams communications.

- Documents produced with Defendant's Third Supplemental Disclosures, which include documents that Defendant submitted to Dane Street in connection with facilitating the IME of Plaintiff.

- Documents produced pertaining to communications between Dane Street and Dr. Kaisler-Meza, and other proprietary confidential documents of Dane Street. For instance, Dr. Kaisler-Meza's internal rough draft IME report.

- A 10-year-old stipulation and waiver entered into by a different insurer.

Defendant objects to the supplementation of the record, arguing that consideration of the documents is unnecessary. The Court agrees. First, the documents are largely irrelevant to this Court's *de novo* review as they do nothing to advance Plaintiff's burden of providing entitlement

1  to benefits by a preponderance of the evidence.  Reports that are duplicative of those already in the

2  record have no significance.  Second, the Ninth Circuit has rejected considering a claimant's pre-

3  disability salary or wages where, as here, no such requirement was enumerated in the Policy.  *See*

4  *McBurnie v. Life Ins. Co. of N. Am.*, 763 F. App'x 596, 598 (9th Cir. 2017).  Here the Policy does

5  not have any "gainful wage requirement," and so any consideration of a prior waiver is

6  unnecessary.  Finally, and perhaps most importantly, the robust and voluminous administrative

7  record is complete and contains ample evidence for the Court to render its decision.  The Court

8  thus declines to expand the administrative record to consider the documents sought to be

9  recognized by Plaintiff.

### B.  Plaintiff's Entitlement to Benefits

11  As noted above, the Policy provides a monthly long term disability benefit of 60% of

12  monthly pre-disability earnings (to a maximum of $15,000/month) if a claimant becomes "totally

13  disabled."  "Totally disabled" is defined as:

> For the first 30 months, you are totally disabled when, as a result of sickness or injury, you are unable to perform with reasonable continuity the substantial and material acts necessary to pursue your usual occupation in the usual and customary way.

> After benefits have been paid for 24 months of disability you are totally disabled when, as a result of sickness or injury, you are not able to engage with reasonable continuity in any occupation in which you could reasonably be expected to perform satisfactorily in light of your age, education, training, experience, station in life, and physical and mental capacity.

20  The Policy provides that once benefits are approved, a claimant "must be under the regular

21  care of a physician" unless "regular care" would not improve the disabling condition(s) or would

22  not prevent a worsening of the disabling condition(s).  The Policy defines "regular care" as "you

23  personally visit a physician as frequently as is medically required, to effectively manage and treat

24  your disabling condition(s)," and "you are receiving appropriate medical treatment and care for

25  your disabling condition(s), which confirms with generally medical standards."  Further, under the

26  Policy, Plaintiff was required to provide "Evidence of Continuing Disability," defined as:

United States District Court
Northern District of California

1

**Evidence of Continuing Disability**

2

Once Unum approves your claim **you will be** asked to provide
3
evidence of continuing **disability** at reasonable intervals based on
your condition.     Evidence of continuing **disability** means
4
documentation of your condition that is sufficient to allow **us** to
determine if **you** are still disabled.  Upon request, **you will** be asked
5
to provide evidence of continuing **disability** within 45 days.  If
evidence is not provided within that period of time, Unum will contact
6
your **physician** in an effort to obtain the necessary documentation. If
**you** do not submit evidence of continuing **disability** and Unum is
7
unable to obtain the necessary documentation from your **physician** or
from a reasonably requested examination by a **physician of our**
8
choice, your payments will end.   Upon receipt of evidence of
continuing **disability**, benefit payments **will** resume subject to the
9
terms of the policy.  **We** will send **you** a payment for any period for
which Unum is liable.

10        While acknowledging that the *de novo* standard of review applies, Plaintiff argues that

11  Defendant was required to "develop evidence" to justify its change in decision.  However, under

12  the terms of the Policy and the law of this Circuit, it is *Plaintiff*'s burden to prove entitlement to

13  benefits at all times.  *See Muniz*, 623 F.3d at 1294 ("As concluded by other circuit courts which

14  have addressed the question, when the court reviews a [claim] administrator's decision under the

15  de novo standard of review, the burden of proof is placed on the claimant.").  Plaintiff's attempt to

16  shift the burden by arguing that Defendant must show a change in condition sufficient to justify

17  the termination of benefits is an argument that multiple courts have expressly rejected.  For

18  instance, in *Muniz*, the Ninth Circuit explained that there was no case law to support the plaintiff's

19  argument that an administrator bears the burden of proving disability when benefits are terminated

20  without a showing of a change in condition.  *Id.*  Likewise, in *Frost v. Metropolitan Life Insurance*

21  *Co.*, 320 F. App'x 589, 592 (9th Cir. 2009), the Ninth Circuit rejected the plaintiff's argument that

22  the insurer had to show a change in her condition to justify terminating her benefits.

23        The burden is on Plaintiff to show proof of a *continued disability*.  Under the terms of the

24  Policy, failure to so prove justifies a termination of benefits.  Further, the Policy also provides that

25  benefits will also cease when, among other things, Plaintiff is "no longer disabled under the terms

26  of the long term disability plan" or he "fail[s] to comply with the Evidence of Continuing

27

28  ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT; ENTERING JUDGMENT IN
FAVOR OF DEFENDANT

United States District Court
Northern District of California

1    Disability section." *See Madden v. ITT Long Term Disability Plan for Salaried Emps.*, 914 F.2d

2    1279, 1286 (9th Cir. 1990) (holding that ERISA plan administrator did not abuse its discretion in

3    denying benefits, in part, because the plaintiff failed to provide medical evidence to support his

4    claims).  Accordingly, Defendant was not required to prove a change in circumstances.  Instead,

5    Plaintiff was (and is) required to prove a continued disability that entitles him to benefits.  The

6    past payment of long-term disability benefits does not operate as an estoppel or compel the

7    payment of future benefits.  *See Muniz*, 623 F.3d at 1296.

8         Plaintiff next argues that his disability neither improved nor "changed" in August 2020.

9    His medical records reflect a different story—by 2019 and 2020, as compared to 2013 and 2014

10   when Plaintiff had his ankle and knee surgeries, Plaintiff's ankle and knee were healed.  Plaintiff

11   increased his activities and his treatment decreased in frequency and intensity as he no longer

12   needed regular care for knee, ankle, and back pain.  Plaintiff was not receiving regular scans, was

13   not seeing any specialists, and his physical exams did not document strength, motor, or sensory

14   deficits.  His medical records from 2019 through 2020 document the following:

15   • **April 9, 2019—Dr. Savita Nallapa**:  Plaintiff was seen to establish care and denied any
16     specific complaints.  Plaintiff reported being very active around the house, did gardening,
       cooked, and watched his grandchildren.  On exam, Plaintiff was in no acute distress; had
17     trace lower extremity edema; findings otherwise were unremarkable.  Blood pressure was
       well-controlled.  Plaintiff was advised to lose weight and exercise.  AR 1446–51.
18

19   • **December 9, 2019—Internist Dr. Albert Liang**: Plaintiff noted back pain and that he had
       a flare around 2 months prior.  He reported previously receiving acupuncture for a prior
20     flare that had been effective.  On exam, he was in no acute distress, there was no vertebral
       tenderness, no straight leg raise sign, he could stand on his toes and heels, motor strength
21     was 5/5 in all extremities, sensation intact, and sensory exam was symmetric bilateral to
       touch.  X-rays and referrals for chiropractic care and pain management were
22     recommended, but he declined.  Plaintiff also declined NSAIDs, and opted for
       acupuncture.  Plaintiff was advised to return if symptoms worsened.  *Id.* at 1426–27.  He
23     did not return to see internist Dr. Liang, or follow-up with any provider regarding his
24     reported back pain flare.  There is also no evidence he underwent acupuncture treatment.

25   • **February 2019–February 2020—Mental health treatment with Dr. Padmalath
26     Akkireddi, LCSW Tyler Sussex and Yulin Cho**: Indicated that Plaintiff was stable and
       no restrictions or limitations were advised.  In April 2019, he started walking 20 minutes
27     every morning and his leisure time was spent online games with friends.  He also reported

28

gardening, cleaning, organizing the house, and cooking. *Id.* at 1453–54. In January 2020, he lost 20 pounds. *Id.* at 1413. Plaintiff completed an anger management course February 20, 2020. *Id.* at 1409–10.

- **April 3, 2020—Dr. Nallapa Televisit**: Plaintiff did not report any complaints regarding his knees, back, or lower extremities. There was no pain medication noted. Plaintiff reported losing more weight and feeling "well." *Id.* at 1577–81.

- **May–July 2020**: Plaintiff was seen at the VA for wound care for epidermal cysts (extracted on June 8, 2020). Physical exams did not document any remarkable findings with respect to his knees, back, extremities, or any ongoing orthopedic complaints or restrictions and limitations. At a May 18, 2020 visit, Plaintiff was noted to have grossly intact motor strength and sensation, was ambulating independently, and reported moderate activity. *Id.* at 2050. At a June 12, 2020 visit, he had normal gait with no crepitus or fluctuance on musculoskeletal exam. *Id.* at 2040. At a July 7, 2020 visit, he was "well looking," with no abnormal musculoskeletal findings noted. *Id.* at 2027–30.

Plaintiff's medical records show that he infrequently visited medical providers, had unremarkable physical examination findings, and was not receiving ongoing treatment for his back, knee, or ankle pain and that the pain seemingly resolved. The records thus are indicative of Plaintiff's improvement.

In response, Plaintiff references a conclusory narrative response in an April 29, 2020 report where Dr. Nallapa marked "No" in response to the question of whether Plaintiff could perform sedentary work, but left blank the request for her explanation. *See id.* at 1387. The credibility of physicians' opinions turns not only on whether they report subjective complaints or objective medical evidence of disability, but on (1) the extent of the patient's treatment history, (2) the doctor's specialization or lack thereof, and (3) how much detail the doctor provides supporting his or her conclusions. *Shaw v. Life Ins. Co. of N. Am*, 144 F. Supp. 3d 1114, 1129 (C.D. Cal. 2015). Dr. Nallapa has a limited treatment history of Plaintiff. She first saw Plaintiff in April 2019, and her final visit occurred in April 2020 via telehealth. Additionally, Dr. Nallapa is an internist, she does not specialize in pain or orthopedics. Finally, Dr. Nallapa neither provided any explanation for her opinion, nor indicated any complaints by Plaintiff about pain or any exam findings that would warrant such severity of condition that would preclude all work. *See* AR 1577–81.

United States District Court
Northern District of California

1    Plaintiff also suggests that the Court should accept at face value his repeated complaints of

2    pain.  But these complaints would not preclude him from performing the sedentary work identified

3    by Defendant.  Further, Plaintiff's reports of pain are not supported by his medical records.  There

4    is no record of ongoing pain management treatment; instead, Plaintiff declined recommended

5    interventions as of December 2019.  *See Shaw*, 144 F.Supp.3d at 1132 ("Courts discredit a

6    plaintiff's subjective belief that she is disabled if she refuses treatment or is not diligent in

7    following a treatment plan that could alleviate her symptoms."); s*ee also Mitchell v. Colvin*, 2015

8    WL 1487022, *11 (C.D. Cal. 2015) ("A factfinder may properly discount a plaintiff's subjective

9    claims by pointing to evidence of a lack of treatment").  Likewise, the infrequent treatment is

10   inconsistent with the alleged severity of pain.  The record is devoid of documentation that would

11   support restrictions and limitations precluding sedentary work as of August 2020.  *See Seleine v.*

12   *Fluor Corp. Long Term Disability Plan*, 598 F.Supp.2d 1090, 1101–02 (C.D. Cal. 2009) (finding

13   pain complaints subject to verification by objective medical evidence and the claim administrator

14   is under no obligation to accept them at face value).

15   Plaintiff next attacks the IME, arguing that the report should not be accepted because it is

16   inconsistent with an internal rough draft.  *See supra* (denying Plaintiff's request to admit the

17   draft).  This is not sufficient grounds to ignore Dr. Kaisler-Meza's IME report.  The report

18   provides well-reasoned and supported opinions regarding Plaintiff's functional capacity.  Dr.

19   Kaisler-Meza, an independent board-certified physiatrist and Qualified Medical Examiner, is the

20   only physician who examined Plaintiff during the relevant time period (including reviewing his

21   medical records).  Plaintiff has not offered any medical evidence that controverts or contradicts

22   Dr. Kaisler-Meza's well-reasoned medical opinion.  Moreover, Dr. Kaisler-Meza's opinions are

23   consistent with Dr. Lahey's and Dr. Brown's conclusions.

24   Finally, Plaintiff argues that the examples of the alternative sedentary occupations

25   Defendant's vocational experts identified were unsuitable because (1) they require additional

26   training or require accommodations, (2) failed to find an occupation within Plaintiff's station in

27
28

1    life; and (3) failed to find a wage requirement.

2                    **1.  Alternative Sedentary Occupations**

3              Plaintiff first argues that the Policy's "any occupation" definition of disability does not

4    "permit consideration of occupations [he] cannot be trained to do, only those he can do," and that

5    the "question presented is what the insured can do now, not what he can be trained to do later."

6    However, the Policy's use of "any occupation" is not so confined.  Consistent with the Policy and

7    considering Plaintiff's age, education, training, experience, station in life, and physical and mental

8    capacity, Defendant's vocational experts identified the sedentary occupations of Repair Order

9    Clerk, Vehicle Maintenance Scheduler, and Dispatcher as possible options.  The Policy does not

10   require that Plaintiff be *currently* qualified to perform these jobs.  It only requires that the jobs be

11   ones he "could reasonably be expected to perform."  For example, in *Haber v. Reliance Standard*

12   *Life Ins. Co.*, 2016 WL 4154917, at *7 (C.D. Cal. 2016), the policy defined "any occupation" as

13   "an occupation normally performed in the national economy for which an insured is reasonably

14   suited based upon his/her education, training or experience."  The plaintiff argued that the "present

15   tense wording" of that policy's "any occupation" definition should be interpreted considering his

16   "current ability to perform a suitable alternative occupation" that did not require additional

17   training.  *Id.*  The court rejected this argument, finding that it was unsupported by the plain

18   language of the policy.  Accordingly, under the plain language of the Policy, the sedentary

19   occupations identified by Defendant are permissible options.

20                  **2.  Skills Required to Perform the Identified Occupations**

21             Plaintiff next argues that he would need training to perform the identified alternate

22   occupations.  The Court disagrees.  The vocational experts were careful to identify occupations

23   that would not require any additional training.  For example, on August 20, 2020, following Dr.

24   Kaisler-Meza's IME, Senior Vocational Rehabilitation Consultant Beth S. Darman, conducted a

25   vocational review to determine whether occupations existed that Plaintiff could reasonably be

26   expected to perform satisfactorily in light of his age, education, training experience station in life,

27

28   Case No.: 5:21-cv-03207-EJD
     ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT; ENTERING JUDGMENT IN
     FAVOR OF DEFENDANT

United States District Court
Northern District of California

and physical and mental capacity.  AR 1675–78.  As part of her assessment, VRC Darman reviewed Plaintiff's job description, a Work Experience and Education Questionnaire completed by Plaintiff, various communications Plaintiff had with Defendant describing his vocational/educational background, research on Plaintiff's background/history, and the Policy.  Based on her review, Sr. VRC Darman identified sedentary occupations Plaintiff could perform that were consistent with his prior occupations.  She explained that no vocational adjustment was required, noting Plaintiff "would be familiar with the material duties" and "would only need to learn proprietary software; this requirement would apply to any new employee."  *Id*. at 1677.  No special training was required, and Plaintiff "would not need any special licenses or certifications to perform the job alternatives."  *Id.* at 1677–78.  She also noted that "[Plaintiff] has demonstrated consistent experience in coordinating, analyzing, compiling, supervising, taking instructions and precision working.  He has indicated that he is familiar with word programs and spreadsheets and can type, as he was required to write reports.  He would be familiar with repair orders, scheduling maintenance and dispatching service crews to complete a task."  *Id.* at 1677.

### 3.  Station in Life

Plaintiff also argues that the occupations identified do not meet his station in life.  In March 2021, in response to an inquiry from Plaintiff's counsel, Sr. VRC Marsiano again confirmed the occupations were consistent with Plaintiff's station in life, stating "Regarding the insured's representative's opinion that the occupations identified were not consistent with the insured's station in life, the occupations identified are within the insured's demonstrated Specific Vocational Preparation (SVP) and General Educational Development (GED) levels and provide an income consistent with the policy gainful definition of 60% of the insured's prior level of income."  *Id.* at 3284; 3291.  Plaintiff offers no contrary evidence to rebut this finding.

Instead, Plaintiff takes issue with the use of a 60% gainful wage basis, arguing that because the Policy does not have a wage requirement, the use of the 60% standard is improper.  However, Defendant need only adhere to the Policy.  Because the Policy does not have a gainful wage

United States District Court
Northern District of California

United States District Court
Northern District of California

1   requirement, Defendant was not required to consider Plaintiff's salary or income when assessing

2   his entitlement to benefits under the Policy's "any occupation" definition.  *See Pannebecker v.*

3   *Liberty Life Assur. Co. of Boston*, 542 F.3d 1213, 1220 (9th Cir. 2008) (holding that because the

4   policy did not require consideration of salary, the claims administrator did not abuse its discretion

5   in failing to consider the claimant's most recent salary); *McBurnie*, 763 F. App'x at 598 (the plan

6   did not require claim administrator to specifically identify a job with a reasonably substantial

7   income).

8        While Defendant had no obligation to consider earnings or any other item not stated in the

9   Policy, Defendant's Claims Manual states that the vocational experts should consider whether the

10  "vocational alternatives provide the claimant with earnings equal to or greater than 60% of pre-

11  disability earnings or the gross monthly benefit."  *See* AR 1729, 1732.  Considering the 60% wage

12  factor (along with all the other pertinent vocational factors), the vocational experts appropriately

13  identified examples of alternative occupations Plaintiff could perform that were consistent with his

14  age, education, training, experience, station in life, and physical and mental capacity.

15                          **4.   Required Accommodations**

16       Plaintiff last argues that his sitting and standing restrictions and limitations require

17  workplace accommodations.  But there is no evidence that Plaintiff required this accommodation

18  to work.  Instead, the record demonstrates that alternating sit/stand positions is not an

19  accommodation, and that Plaintiff could perform the identified occupations without interrupting

20  workflow.  Moreover, working at a sit/stand workstation or desk is commonplace in today's work

21  environment and are commonly made available by employers to all employees, including those

22  without medical needs, for ergonomic and health reasons.[3]

23  _____

24  [3] Plaintiff also argues that during the time Defendant paid him benefits—January 9, 2014 to
    August 21, 2020—it miscalculated benefits because it interpreted calendar year as running from
25  January 1 through December 31.  On June 23, 2022, Plaintiff withdrew this argument, although it
    is unclear which portion of the argument is withdrawn as Plaintiff expressed that he was not
26  withdrawing the argument about the calculation of "station in life" wages.  Dkt. No. 57.  To the
    extent Plaintiff still pursues this claim, because he failed to exhaust the claim the Court declines to
27  address the argument.

    Case No.: 5:21-cv-03207-EJD
28  ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT; ENTERING JUDGMENT IN
    FAVOR OF DEFENDANT

United States District Court
Northern District of California

1

**C.  Breach of Fiduciary Duty**

Plaintiff last argues that Defendant breached its fiduciary duty because (1) it did not provide him the evidence it considered on appeal and (2) it improperly relied on IME physician Dr. Kaisler-Meza.  First, the record indicates that Defendant provided Plaintiff the entire claim file and offered a 30-day period to respond even though Plaintiff's claim pre-dated the 2018 ERISA regulations.  AR 1729, 3028–38, 3051.  Second, as discussed above, Plaintiff fails to identify any errors with Dr. Kaisler-Meza's examination or offer evidence to rebut Dr. Kaisler-Meza's findings.  Plaintiff has thus failed to show a breach of fiduciary duty.

**IV.    CONCLUSION**

Based on the foregoing, the Court **DENIES** Plaintiff's motion for judgement and **ENTERS JUDGMENT** in Defendant's favor.

**IT IS SO ORDERED.**

Dated: October 7, 2022

EDWARD J. DAVILA
United States District Judge

Case No.: 5:21-cv-03207-EJD
ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT; ENTERING JUDGMENT IN FAVOR OF DEFENDANT
28